# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| OPENMETHODS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 10-761-CV-W-FJG |
| | ) |
| MEDIU, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is defendant Mediu LLC's Motion for Summary Judgment as to Defendant's Counterclaim (Doc. # 103) defendant Michael R. Berichon's Motion for Summary Judgment (Doc. # 104); defendant Mediu's Motion for Summary Judgment as to Plaintiff's Amended Complaint (Doc. # 105), defendants' Motion to Strike the Affidavits of Timothy Barnes and Rebecca Pedigo (Doc. # 127) and the parties' Stipulation of Dismissal of Count I and II as to defendant Michael R. Berichon (Doc. # 136).

### I.  BACKGROUND

Open Methods, LLC ("OM") is a company which locates and provides to its customers consultants who are skilled in voice over IP and call center applications. Since 2005, Mediu, LLC ("Mediu") has been one of OM's customers and OM has provided several consultants to Mediu.  In November 2008, Genesys Telecommunications Laboratories, Inc. ("Genesys") obtained a contract from AT&T and needed a consultant to work on a Voice Genie project know as the AT&T New Jersey Project.  Genesys, then contracted with Mediu to find a qualified consultant to perform

the work.  Mediu in turn contacted OM for assistance in locating a consultant to work on this project.  After reviewing several candidates, OM and Mediu entered into a written contract whereby OM agreed to provide an on-site consultant, Kris Garg, to work on the AT&T New Jersey project.  The initial term of the contract was from December 1, 2008 to July 31, 2009.  Either party could terminate the contract with two weeks notice.  The contract contained a non-solicitation clause which prohibited Mediu from hiring Garg directly or indirectly without OM's consent.  At the same time, OM entered into an oral contract with Kris Garg ("Garg") to work on the project.  In August 2009, both the written contract and the oral contract were extended for three months by agreement of the parties from mid-August 2009 to mid November 2009.  Mediu paid OM all outstanding invoices for work Garg performed on the project through October 2009.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. 242, 248 (1986).  In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586,106 S.Ct.1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply

show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985).

### III. DISCUSSION

**A. Mediu's Motion for Summary Judgment on Plaintiff's Claims**

**1. Count I - Permanent Injunction**

OM in Count I of the First Amended Complaint argues that the defendants' acts in attempting to employ and directly pay Garg is a violation of the Non-Solicitation clause contained in the contract. OM states that unless a permanent injunction is entered prohibiting defendant from employing or attempting to employ Garg, it will suffer irreparable damages and lose the ability to rely upon Garg. OM argues that it does not have an adequate remedy at law and thus a permanent injunction should be issued.

Mediu moves for summary judgment on this claim arguing that OM cannot show that it will be irreparably harmed if Mediu is permitted to employ Garg. Additionally, Mediu notes that Garg has ended his relationship with OM. Mediu also argues that OM has an adequate remedy at law, so an injunction is not necessary. OM does not address or refute Mediu's arguments on this claim. In reply, Mediu argues that OM has abandoned this claim. The Court agrees that this claim has been abandoned. Issues

3

or arguments not addressed by an opposing party are deemed conceded. Small v. Federal Home Loan Mortgage Corp., No. 11-CV-0470-DGK, 2012 WL 715823, *2 (W.D.Mo. March 5, 2012)(citing Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir.1985)). Even if OM had responded to this argument, the Court finds that an injunction is not warranted because plaintiff would have an adequate remedy at law, through an award of damages. "An injunction is an extraordinary and harsh remedy and should not be granted when there is an adequate remedy at law." American Ass'n. Of Orthodontists v. Yellow Book USA, Inc., 277 S.W.3d 686, 695 (Mo.App. 2008). Accordingly, the Court hereby **DENIES** Mediu's Motion for Summary Judgment on Count I - Permanent Injunction.

**2. Count II -Breach of Contract**

Open Methods is claiming that Mediu is indebted to them in the sum of $96,000. In order to state a claim for a breach of contract, OM must show, "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo.2010)(en banc).

As discussed above, the Letter of Engagement, was the contract between OM and Mediu. Under the terms of the contract, Mediu was to pay OpenMethods on a monthly basis for supplying Kris Garg as a consultant on the project. The amount of the monthly payments ($16,000) was clearly articulated, the term of the contract was stated (8 months), and the method of reporting time was stated. OpenMethods was to report time no later than 5:00 CST each Monday for the previous week's billable work.

OpenMethods did perform under the contract, by supplying Garg to work on the project. Mediu paid OpenMethods for a period of time (through October 2009), but then stopped paying OpenMethods. OM argues that this is a breach of the contract by Mediu. Mediu argues that it was justified in not continuing to pay OpenMethods, because OM breached an implied term of the contract (not paying Garg in a timely fashion). Nothing in the Letter of Engagement states or discusses OM's payments to Garg. Mediu argues that the Letter of Engagement between OM and Mediu contained an implied term that OM would pay Garg. OM in fact did pay Garg through June 2009. Mediu states that OM had a contractual obligation to pay Garg and when it stopped paying him, OM materially breached its contract with Mediu. Mediu is arguing that OM first breached the contract on or after October 28, 2009, and therefore it is released from any further obligations or performance under the contract including payment of fees to OM or compliance with the restrictive covenant. "The first to breach rule. . . holds that a party to a contract cannot claim its benefit where he is the first to violate it." Classic Kitchens & Interiors v. Johnson, 110 S.W.3d 412, 417 (Mo.Ct.App.2003).

However, before analyzing whether the first to breach rule applies, the Court must address whether the payment of Garg was an implied term of the OM-Mediu contract. In Glass v. Mancuso, 444 S.W.2d 467 (Mo.1969), the Court stated:

> "[I]n order that an unexpressed [contract] term may be implied, the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties. . . Accordingly, there can be no implication as against express terms of the contract; and the courts will be careful not to imply a term . . . as to which the contract is intentionally silent . . ..
>
> Id. at 478 (citing 17A C.J.S. Contracts § 328, p. 287-291).

5

Additionally, in <u>Giessow Restaurants Inc. v. Richmond Restaurants, Inc.</u>, 232 S.W.3d 576 (Mo.App. 2007), the Court stated:

> [W]hen parties reduce their agreements to writing we presume that the instrument contains the entire contract, and we will not imply additional provisions unless necessary to effectuate the parties clear intentions. . . .When we do find implied obligations, these implied obligations "rest entirely upon the presumed intention of the parties, as gathered from the terms actually expressed in the writing itself; and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to expressly stipulate with reference thereto, or it must appear that it is necessary to infer such an obligation to effectuate the full purpose of the contract."

<u>Id</u>. at 579 (quoting <u>Conservative Federal Savings & Loan Ass'n v. Warnecke</u>, 324 S.W.2d 471, 478-79 (Mo.App.1959)).

OM argues in opposition, that the parties did not intend for the contract to contain an implied term that OM would pay Garg. OM states that it only contracted to provide a consultant which it did. OM states that the delay in paying Garg resulted because Garg was often late in submitting invoices and failed to enter time into the appropriate time-keeping systems.

If the obligation to pay Garg was not an implied term of the OM-Mediu contract, then the first to breach rule would not apply. However, if the obligation to pay Garg was an implied term of the OM-Mediu contract, then it must be determined whether the breach was material. After reviewing the parties' briefs on the breach of contract issue, the Court finds that there are disputed issues of fact regarding whether OM's responsibility to pay Garg was an implied term of the OM-Mediu contract and if OM's breach of the contract was a material breach. Accordingly, because there disputed issues of fact which remain regarding the Breach of Contract count, the Court hereby

6

**DENIES** Mediu's Motion for Summary Judgment on this Count.

### 3. Count III - Tortious Interference With Business Expectancy

The elements of a claim for tortious interference with business expectancy include: " (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." Healthcare Services of the Ozarks Inc. v. Copeland, 198 S.W.3d 604, 614 (Mo. banc 2006).

> Missouri law recognizes that intentional interference with plaintiff's business expectancies may be justified if defendant's aim is to protect its valid economic interests. . . . In Missouri, justification exists if the defendant has an economic interest in the outcome of the business relationship so long as the defendant does not employ improper means in causing the interference. . . . Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law.

American Equity Mortgage v. First Option Mortgage, LLC, No. 4:06CV1167 CDP, 2006 WL 3032417, *4 (E.D.Mo. Oct. 23, 2006)(internal citations and quotations omitted).

Mediu argues that it is entitled to summary judgment on this claim because no contract or business expectancy existed between OM and Garg. Mediu states that OM notified Garg in mid-May it was terminating the agreement. Garg did not actually sign with Mediu until May 25, 2010. Thus, Mediu argues that because Garg's agreement with OM no longer existed, Mediu could not have interfered with it. OpenMethods states that a contract existed between itself and Garg after December 2009, because Garg continued to enter his time in their system and work on the project. OM also

7

states that Mediu initiated contact with Garg by sending him a sub-contract on February 16, 2010.  The Court finds that it is unclear exactly when Garg terminated his contract with OM.  However, even if OM could show the existence of a contract with Garg, the Court finds that it cannot establish the third or fourth elements of this claim.  The third element is intentional interference by defendant causing or inducing the breach.  In this case, the evidence is clear that Garg was the party who first reached out to Genesys and then to Mediu for assistance in getting his payments from OM.  In his deposition, he testified:

Q.  Okay. And do you think that it was Mediu that convinced you not to continue on with your relationship with OpenMethods?

A.  No.  It was all this payment.  They were not paying.  So it were all circumstances created by OpenMethods.

Q.  Okay.  So what is the reason that you quit doing business with OpenMethods?

A.  Reason, they were not paying me, and they stopped taking my calls, they stopped taking my e-mails and everything pretty much, like - - I was just all my myself, like, and they keep taking the payment from Mediu and not giving a payment to me.

(Garg Depo., pp. 190-91).

Additionally, this is confirmed by emails which were exchanged between Mediu and Garg on May 25, 2010.  John Jennings from Mediu asked Garg to confirm that he has informed Open Methods that he is no longer associated with them effective 1/1/10.  Garg responds to the email by stating that he is still waiting for his old payment from OM from June 2009 and asks Mediu not to let OM know that he has joined them.  Garg states, "I am trying to lure/tell him that, if he clears my old dues, I will sign-up with him.  If Tim comes back to you guys, tell him, to clear out old payment and then you will talk about it further.  That's only way, he is going to pay me back."  (Garg Depo. Ex. BB).

8

Mediu responds to Garg that they can't put him on contract from 1/10 going forward unless he lets OM know that he is going forward with Mediu. John Jennings told Garg "We can't pay Kris or move forward any more unless he divorces OM." Id. Garg responds that he doesn't have any contract with OpenMethods for November 2009 and that he was telling OpenMethods that if they paid his invoices he would sign a new contract. He states that he has not done that and he was telling OpenMethods this so that they might pay him. Mediu responds: "Kris - Mediu needs to hear from you that you have informed OpenMethods that you no longer have a contract with Open Methods as of 1/1/2020 [sic]. You mentioned to me today that our contract with Open Methods expired at the end of 2009 and that you have told Open Methods that you no longer have a contract with them. Can you confirm that to Mediu?" Garg responds back that he doesn't have a contract with Open Methods from 1/1/2010 and that his contract with Open Methods expired in 2009. Mediu presses the point and asks Garg to also confirm that he has informed Open Methods that he no longer has a contract with them. Garg responds "I have informed OpenMethods that I will not signing [sic] the contract with them. Thanks Kris." Id. Thus, the Court finds that it is clear that Mediu did not intentionally interfere in the contract or induce Garg to breach the contract between OM and Garg.

      Mediu also argues that it was justified in interfering with the contract because it had an economic interest to protect. The potential loss of Garg could hurt its relationship with Genesys, which was Mediu's largest client. OpenMethods states that Mediu was not justified in paying Garg directly because this violated the non-solicitation clause. OpenMethods also argues that Mediu could have protected its economic

9

interest by paying OM the money it had already received from Genesys. In <u>Adbar Company v. PCAA Missouri, LLC</u>, No. 4:06-CV-1689 (JCH), 2008 WL 68858 (E.D.Mo. Jan. 4, 2008), the Court stated;

> Justification exists for interfering with another's business expectancy when one undertakes to protect a valid economic interest. . . .Competitive conduct is justified, as is interference taken to avoid a substantial loss. . . . Plaintiff has the burden of producing substantial evidence to establish an absence of justification. . . . An absence of justification is the absence of any legal right on the part of defendant to take the action about which a plaintiff complains. . . . Conduct lacks justification when a defendant employs improper means to further the defendant's interests to the detriment of the plaintiff. . . .Improper means are acts that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or common law. . . . No liability arises, however, from interfering with a business expectancy if the defendant had an unqualified legal right to do the action about which plaintiff complains.

<u>Id</u>. at *10 (internal citations and quotations omitted). In the instant case, Mediu had an very important economic interest to protect. Genesys accounted for approximately ninety percent of Mediu's business. If Garg left the project because he was not receiving timely payment, this could jeopardize Mediu's relationship with its largest client. Additionally, the Court finds that plaintiff has offered no evidence indicating that Mediu employed any improper means in negotiating with Garg. Indeed, from the email exchange noted above, Mediu told Garg that they could not put him under contract until he had specifically informed OM that he had terminated his contract and would not be extending it. Accordingly, because the Court finds that plaintiff cannot establish either the third or fourth element of this claim, the Court hereby **GRANTS** Mediu's Motion for Summary Judgment on Count III - Tortious Interference with Business Expectancy.

10

## B. Mediu's Motion for Summary Judgment on the Counterclaim

### 1. Breach of contract

In its counterclaim Mediu states that an implied term of the contract was an obligation on OM's part to timely pay Garg for his services. Mediu alleges that OM breached the contract when it stopped paying Garg on a timely basis. OM argues that the implied duties which Mediu seeks to impose conflict with the express provisions in the contract. OM argues that it did not breach the contract and that they provided a resource to Mediu. OM states that Genesys approved all the work and paid Mediu through September 2010. OM argues that the Court should not grant summary judgment based on the implied intent of the parties.

### 2. Unjust Enrichment

Mediu argues that OM has been unjustly enriched because it paid OM $56,000 and yet failed to pay Garg for his time from July 2009 - October 2009. The elements of a claim for unjust enrichment are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of that benefit; (3) acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without paying for its value." Affordable Communities of Missouri v. EF&A Capital Corp., No. 4:11-CV-555 CAS, 2012 WL 43520, *12 (E.D.Mo. Jan. 9, 2012).

> The third element of an unjust enrichment claim, unjust retention of the benefit, is considered the most significant and most difficult of the elements. . . .In determining whether it would be unjust for the defendant to retain the benefit, courts consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage. . . . There must be something more than passive acquiescence, such as fault or undue

11

>advantage on the part of the defendant, for defendant's retention of the
>benefit to be unjust.

Id. at *13 (internal citations and quotations omitted).

OM responds that Garg admitted that he was late in submitting his invoices, sometimes waiting three or four months to submit them. OM also states that Garg had difficulty with the time entry systems, which further delayed his payments. Finally, since Mediu stopped paying OM after October 2009, this also resulted in Garg not being paid the full amount.

The Court finds that the same issues which prevented the Court from granting Mediu's Motion for Summary Judgment on the Breach of Contract Claim in Count II of plaintiff's First Amended Complaint, also prevent the Court from granting summary judgment on Mediu's Counterclaim. Accordingly, Mediu's Motion for Summary Judgment as to the Counterclaim is hereby **DENIED** (Doc. # 103).

### C. Defendant Berichon's Motion for Summary Judgment

**Tortious Interference**

The only claim pending against Berichon is the tortious interference claim. Berichon relies on the same arguments submitted in support of Mediu's Motion for Summary Judgment on this claim. OM argues that Berichon is individually liable because he violated the non-solicitation clause agreed to by Mediu. OM argues that this claim is based on an email that Berichon sent to Garg saying "we can't pay you or move forward until you divorce OM." OM argues that this resulted in Garg leaving OM and deleting all his time entries in OM's time keeping system. Berichon argues that there is no evidence that he acted out of self-interest or used improper means to tortiously

12

interfere with OM's business expectancy. The Court agrees and for the reasons discussed above, the Court hereby **GRANTS** summary judgment to defendant Berichon on the Tortious Interference Claim (Doc. # 104).

### D. Defendants' Motions to Strike Affidavits

### 1. Timothy Barnes

Defendant moves to strike ¶¶ 6, 8 and 9 of Timothy Barnes' affidavit, because it argues that the affidavit directly contradicts his deposition testimony. The relevant portions of the Affidavit state:

> 6. Neither OpenMethods nor I intended for the Contract to contain an implied term that OpenMethods had a duty to pay Garg before OpenMethods would be paid under the terms of the Contract.
>
> 8. OpenMethods' responsibility to pay the consultants it provided to Mediu has never been addressed by OpenMethods or me in prior dealings with Mediu.
>
> 9. An implied duty to pay a resource provided by OpenMethods prior to payment of OpenMethods' invoices by Mediu has never been discussed or negotiated on any of the several Letters of Engagement I have negotiated on behalf of OpenMethods with Mediu.

Mediu argues that the following portions of Barnes' deposition contradict the above statements in his affidavit:

Q. Did Mediu ever pay the resource direct that you provided to Mediu?
A. No.
Q. Who did?
A. We paid resources.
Q. That's OpenMethods?
A. Yes.
Q. So it was assumed that OpenMethods would pay any resource that it provided to Mediu on projects; isn't that correct?
A. I can't comment on what was assumed on the part of Mediu.
Q. I'm not asking you to do that. I'm asking you what you assumed the agreement was with Mediu about that.
A. That we would handle paying the resource.

13

(Barnes depo. P. 383 l. 12- p. 384, l. 4).

. . .

Q. Now, you have provided - I'm saying OpenMethods has had several occasions where it has provided resources to Mediu for projects that Mediu had going on, right?
A. Yes.
Q. And OpenMethods always paid those resources, right?
A. Yes, I believe so.

(Barnes' depo. P. 379, l. 20 - p. 380, l. 3)

. . .

Q. All right. So there's no mention in here about Mediu paying Mr. Garg, is there?
A. No.
Q. It was OpenMethods' responsibility to pay Mr.Garg; isn't that right?
A. He was our contractor, so the agreement between OpenMethods and Mr. Garg was between OpenMethods and Mr. Garg.
Q. And under that agreement, it was OpenMethods' responsibility to pay Mr. Garg whatever was agreed to?
A. Sure.

(Barnes' depo. P. 185, l. 14 - p. 186, l. 1).

In City of St. Joseph, Missouri v. Southwestern Bell Telephone, 439 F.3d 468, 476 (8th Cir. 2006), the Court stated, "when the affiant's affidavit does not actually contradict his earlier testimony, the district court should not strike the affidavit from the record." Similarly, in Pimentel v. St.Louis Public Schools, No. 4:08CV1477 TIA, 2011 WL 128788, *1 (E.D.Mo. Jan. 14, 2011), the Court stated:

> a court should not strike a post-deposition affidavit that 'simply restates information already contained in deposition testimony or elaborates on information already conveyed,' Popoalii [v. Correctional Medical Services, 512 F.3d 488, 498 (8th Cir.2008)], that does not actually contradict the affiant's earlier testimony, that includes statements 'that [the affiant] was confused in [the earlier] deposition or where the affiant needs to explain portions of [the earlier] deposition testimony that were unclear.' City of St.

14

Joseph, Missouri, 439 F.3d at 476.

In the instant case, the Court does not find that the paragraphs in Mr. Barnes' Affidavit contradict his deposition testimony. Rather, the Court finds that he is simply elaborating on issues raised in his deposition. Therefore, the Court hereby **DENIES** Mediu's Motion to Strike the Affidavit of Timothy Barnes.

**2. Rebecca Pedigo**

Mediu moves to strike the Affidavit of because it is not properly authenticated, untrustworthy and does not contain all the referenced documentation. Mediu argues that Ms. Pedigo's affidavit does not meet the requirements of Fed.R.Evid. 803(6), because it does not state that she is familiar with OM's record keeping processes or that it was the regular practice of OM to keep Mr. Garg's Quick Arrow time entries. Additionally, Mediu complains because even though the Affidavit references sixty-five pages, only five of the pages are attached. OM states that initially only five pages of the sixty-five pages were attached for the Court's convenience, but in response to the Motion to Strike, OM has now attached the complete sixty-five pages which were initially referenced in Ms. Pedigo's affidavit.

In her Affidavit, Ms. Pedigo states that she is the records custodian for OpenMethods, LLC and that she is personally acquainted with the facts stated herein. She states that the pages attached are QuickArrow time entry records for Krishan Garg for the AT&T/New Jersey project and that these records are kept in the regular course of business for OpenMethods and that it was in the regular course of business for an employee or resources of OpenMethods to make the record or transmit information to

15

be included in such record.

After reviewing the Affidavit of Ms. Pedigo, the Court finds that it complies with the requirements of Fed.R.Evid. 803(6). Fed.R.Evid. 803(6) states that records of a regularly conducted activity are excluded from the hearsay rule if:

> (A) the record was made at or near the time by - or from information transmitted by - someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Additionally, Mediu attempts to argue that contradictory information was provided by plaintiff's counsel on November 1, 2011, regarding attachments which purported to be Garg's Quick Arrow time entries and that this makes the affidavit untrustworthy. Mediu argues that from this email it is clear that OM did not maintain the entries of Mr. Garg and cannot state that these documents were kept in the ordinary course of business. However, the email clearly states: "1. A pdf file title "007054-007118." These are all of Garg's QuickArrow entries for OpenMethods that my client forwarded to me for 2009 and 2010." (Exhibit 2 to Defendant's Motion to Strike). The documents which are attached to Ms. Pedigo's Affidavit are Bates stamped 007054 - 007118. Thus, the Court does not find that there is any lack of trustworthiness regarding the Affidavit. Accordingly, for the reasons stated above, the Court hereby finds no reason to strike the

16

Affidavit of Rebecca Pedigo. Therefore, defendants' Motion to Strike Affidavits is hereby **DENIED** (Doc. # 127).

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** defendant Mediu LLC's Motion for Summary Judgment as to Defendant's Counterclaim (Doc. # 103); **GRANTS** defendant Michael R. Berichon's Motion for Summary Judgment (Doc. # 104); **GRANTS IN PART** and **DENIES IN PART** defendant Mediu's Motion for Summary Judgment as to Plaintiff's Amended Complaint (Doc. # 105) and **DENIES** defendants' Motion to Strike Affidavits of Timothy Barnes and Rebecca Pedigo (Doc. # 127) and **GRANTS** the parties' Stipulation of Dismissal of Count I and II as to defendant Michael R. Berichon (Doc. # 136).

Date: <u>March 22, 2012</u>   **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri   Fernando J. Gaitan, Jr.
   Chief United States District Judge