# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| OPENMETHODS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 10-761-CV-W-FJG |
| MEDIU, LLC, | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is defendant Mediu LLC's Motion in Limine to Preclude Testimony (Doc. # 150) and OpenMethod's Motion for Reconsideration (Doc. # 153).

### I. MOTION IN LIMINE

Defendant Mediu moves the Court for an Order precluding plaintiff from introducing any witnesses, testimony or documents at trial that conflict with any of the Requests for Admissions that Mediu served upon OpenMethods on June 30, 2011 and which Mediu claims have been deemed admitted due to OpenMethods failure to respond to these requests. Alternatively, Mediu asks the Court to preclude OpenMethods from introducing any evidence in support of OpenMethod's breach of contract claim and/or damages resulting from events which occurred after January 1, 2010.

Fed.R.Civ.P. 36 states in part:

(a) Scope and Procedure.

(1) A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the

scope of Rule 26(b)(1) relating to:
(A) facts, the application of law to fact, or opinions about either; and
(B) the genuineness of any described documents.
. . .
(3) Time to Respond; Effect of Not Responding.  A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

(b) Effect of an Admission; Withdrawing or Amending It.

A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.  Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits . . ..

Mediu states that it served nine requests for Admission on Open Methods on June 30, 2011 and Open Methods failed to respond to these requests.  Mediu states that on August 8, 2011, it filed a notice, along with a copy of the admission requests indicating that because they had not been answered, they were deemed admitted.  Three of the Requests for Admission deal with the issue of whether OpenMethods breached the agreement with Mediu and also the agreement with Kris Garg.  The other six Requests for Admission relate to whether OpenMethods has paid Garg for services performed in the months of July 2009 - December 2009.

In response, OpenMethods states that it has admitted to Requests for Admission Nos. 8-13, which relate to the issue of payment to Garg.  OpenMethods states that it has not claimed that it paid Garg for the months of August 2009 through December

2

2009[1].  OpenMethods states that Requests for Admission Nos. 3, 6 and 7 relate to ultimate legal conclusions to be determined by the Court and it is not appropriate for the Court to deem these issues admitted.  OpenMethods argues that "[w]hile a request for admission may properly pertain to 'the application of law to fact', Fed.R.Civ.P. 36(a), pure legal conclusions, or the truth of a legal conclusion, are out of bounds." <u>Aventure Communications Tech.,L.L.C. v. MCI Communications Services, Inc.</u>, No. 5:07-CV-4095-JEG-RAW, 2008 WL 4280371, *1 (N.D.Iowa Sept. 16, 2008). OpenMethods states that the Court noted that there were disputed issues of fact regarding whether OpenMethods's responsibility to pay Garg was an implied term of the contract and if OpenMethod's breach of the contract was a material breach.  OpenMethods argues that these are clearly legal conclusions which should be determined by the Court.

The three requests for Admission which are at issue are:

**Request No. 3:** Admit that Open Methods was the first to breach the Agreement between Open Methods and Mediu identified in Open Method's First Amended Complaint as Exhibit 1, including any extensions thereto.

**Request No. 6:** Admit that Open Methods has breached the Garg Agreement.

**Request No. 7:** Admit that Open Methods was the first to breach the Garg Agreement.

With regard to Request No. 3, Open Methods states that Mediu is asking it to admit that there was an implied term in their Agreement that OpenMethods would pay Garg.  Open Methods states that it has repeatedly denied and contested that there was an implied term in the Agreement.

---

[1] The Court is unsure whether OpenMethods is claiming that it paid Garg for services for the month of July 2009, as the Suggestions in Opposition only reference August -December 2009. (OpenMethods' Suggestions in Opposition, p. 2).

In Aventure Communications, the Court stated, "[t]he line between a request to admit a pure legal conclusion and the application of law to fact can be murky because the application of law to fact necessarily incorporates an admission as to what the law is." Id. at *1.  In that case, three of the requests asked Verizon to agree that an FCC report and order adopted a presumption and made certain holdings. The Court stated "[t]o ask Verizon to admit the correctness of Aventure's view of the legal significance of an FCC ruling calls for admission of a legal conclusion." Id.  The Court finds that in Requests Nos. 3, 6 and 7, Mediu is asking Open Methods to admit to legal conclusions or the truth of legal conclusions, which is not permitted.

Alternatively, Mediu argues that OpenMethods is precluded from introducing any evidence at trial, which dates after January 1, 2010.  Mediu argues that in ruling on the Summary Judgment motions, the Court found that Mediu had not intentionally interfered with the contract or induced Garg to breach the contract between OpenMethods and Garg.  Mediu states it would be "counterintuitive for this Court to permit OM to recover for any time Garg worked on the AT&T project after December of 2009 when Garg did not have a contract with OM during that time and Garg was being paid directly by Mediu."  (Mediu's Motion in Limine, p. 6).

As the Court stated in ruling on the parties' summary judgment motions, "it is unclear exactly when Garg terminated his contract with OM."  Simply because the Court concluded that OpenMethods could not prevail on their Tortious Interference claim, does not mean that OpenMethods is prevented from presenting any evidence dated after January 1, 2010.  To the contrary, OpenMethods argues that Garg submitted time entries into their system for work he performed in 2010.  Because there are disputed

4

issues of fact relating to when Garg terminated his contract, the Court hereby **DENIES** Mediu's Motion in Limine to Preclude Testimony (Doc. # 150).

## II. OPENMETHODS' MOTION FOR RECONSIDERATION

OpenMethods argues that there is a genuine issue of fact concerning the date Kris Garg's contract with OpenMethods was terminated. OpenMethods states that it is asserting that Mediu induced and caused Garg to retroactively terminate his contract with OpenMethods on May 25, 2010. Plaintiff argues that the "circumstances surrounding the events on May 25, 2010, when plaintiff asserts Garg terminated his contract, could lead a finder of fact to conclude that defendants had intentionally interfered with plaintiff's business expectancy." (Plaintiff's Motion for Reconsideration, p. 2).

There is no specific rule which references Motions to Reconsider in the Federal Rules of Civil Procedure. "However, the Eighth Circuit Court of Appeals has determined that motions for reconsideration are nothing more than Rule 60(b) motions when directed at non-final orders." Wichmann v. Proctor & Gamble Manufacturing, No. 4:06CV1457 HEA, 2007 WL 735017, *1 (E.D.Mo. Mar. 8, 2007)(internal citations and quotations omitted). Similarly, in In re Genetically Modified Rice Litigation, No. 4:06MD1811 CDP, 4:07CV416 CDP, 2008 WL 80663 (E.D.Mo. Jan. 7, 2008), the Court stated:

> In this circuit, motions for reconsideration are construed as Rule 60(b) motions. Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999). Rule 60(b) motions should not be granted as a result of reargument of the merits but must be based on the circumstances enumerated in the Rule. Id. These circumstances include: mistake, inadvertence, surprise, excusable neglect, newly discovered evidence that could not have been

discovered with reasonable diligence, fraud, the judgment being void, and satisfaction, release, or discharge of the judgment. Fed.R.Civ.P. 60(b). In this Circuit, relief for judicial error under Rule 60(b)(1) - the section dealing with mistake- is only available for judicial inadvertence. Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 460-61 (8th Cir. 2000).

Id. at *1.

The Court finds that OpenMethods is simply reiterating arguments which it made in its Summary Judgment motion. As the Court noted in the Order, "It is unclear exactly when Garg terminated his contract with OM. However, even if OM could show the existence of a contract with Garg, the Court finds that it cannot establish the third or fourth elements of this claim." The third element of a tortious interference claim is intentional interference by the defendant and the fourth element is absence of justification. (March 22, 2012 Order, p. 8). So, even though there maybe a factual dispute as to when the Garg contract was terminated, this cannot save OpenMethod's Tortious Interference claim, because they cannot meet the other two elements of this claim. Accordingly, the Court finds no basis on which to reconsider its previous ruling granting Mediu's Motion for Summary Judgment on the Tortious Interference With Business Expectancy claim.

OpenMethods also argues that a recent Missouri Court of Appeals case which is factually similar to the instant case, dictates that this Court reconsider its ruling on the summary judgment motions. OpenMethods states that in J.M. Neil & Associates, Inc. v. Alexander Robert William, Inc., 362 S.W.3d 21 (Mo.App. Jan. 10, 2012), two companies entered into a teaming agreement, where "ARW" served as the prime contractor on a GSA contract and "JMN" served as a sub-contractor to ARW. The teaming agreement also included a non-compete agreement, which prohibited ARW from attempting to

coerce or influence JMN's employees to remain with ARW upon termination of the contract. Problems arose between the two companies and the contract was terminated. On the termination date, John Haylock was the only JMN employee still working for ARW. ARW's owner, Martin Smith, realized that the agreement prohibited him from hiring Haylock to continue working on the GSA contract or trying to influence Haylock to stay. However, Smith told Haylock that if he wanted to continue working on the contract, he would need to secure employment with another staffing company. Smith then gave Haylock the names and phone numbers of four companies that Haylock could contact. One of the companies, Nash Resources, Inc. ("NRI"), was owned by Martin Smith's mother, Mary Lou Nash. On the following day, Haylock called Nash, who was in the office on a Saturday to take his call. She hired Haylock over the phone and told him that she would work out a deal with Smith, so Haylock could return to the same job the following Monday, at the same rate of pay. JMN then filed suit against ARW, alleging breach of contract against ARW and Smith, tortious interference against Nash Resources, Inc. and Mary Lou Nash and a conspiracy to breach and interfere with a contract claim against ARW, NRI, Smith and Nash. A jury returned verdicts in favor of JMN on all counts. The jury awarded compensatory and punitive damages. ARW and NRI filed a motion for judgment notwithstanding the verdict asserting that JMN failed to put forth sufficient evidence upon which the jury could have found that punitive damages were appropriate. The trial court granted the motion and JMN filed an appeal.

On appeal, the Court found that in that case, Nash and Smith had attended a meeting at GSA's office that had also included all employees working on the contract.

At the end of the meeting, Nash suggested to Smith that he terminate the teaming agreement with JMN. Nash testified that Smith called her and informed her that Haylock could not continue to work on the GSA contract unless he found employment with another staffing agency. The Court found that this evidence "establishes that Nash had knowledge of ARW's non-compete agreement with JMN and knew Haylock had been provided with a list of staffing agencies, one of which was her own company, before she ever spoke with Haylock." Id. at 25. The Court also found that the evidence "further permits a reasonable inference that Smith and Nash conspired to hire Haylock away from JMN so that he could continue to work on ARW's GSA contract in violation of the non-compete provisions of the teaming agreement." Id. The Court found that the evidence showed an "intentional wrongful act by ARW and NRI, who both knew their actions were wrongful at the time. Moreover, it is likewise clear and convincing proof that ARW and NRI recklessly disregarded JMN's rights and interests." Id. at 26. Thus, the Court concluded that JMN had made a submissible case for punitive damages and the trial court had erred in granting the motion for JNOV.

OpenMethods argues that in this case, there was a non-solicitation clause which prohibited Mediu from hiring Garg after the end of the project. OpenMethods argues that Berichon was aware of the clause and hired Garg despite this knowledge. Based on the J.M. Neil case, OpenMethods argues that defendants were not justified in hiring Garg in violation of the non-solicitation clause. However, as the Court discussed in the Order ruling the motions for summary judgment, Mediu did not intentionally interfere with the contract or induce Garg to breach the contract. Rather, it was Garg who first reached out to Genesys and then to Mediu for assistance. The deposition testimony of

8

Garg supports this conclusion.  Additionally, this Court determined that if Garg left the project because he was not receiving timely payment, this could have jeopardized Mediu's relationship with Genesys.  The Court recognized that this was a very important economic interest of Mediu's to protect.  Additionally, the Court noted that OpenMethods has not offered any evidence that Mediu employed any improper means in negotiating with Garg and in fact from emails which were attached as exhibits to the summary judgment motions, Mediu told Garg that they could not put him under contract until he had specifically informed OpenMethods that he had terminated his contract with them and would not be extending it.  Thus, the Court finds the J.M. Neil case to be factually distinguishable from the case at bar and provides no basis for the Court to reconsider its previous ruling on the summary judgment motions.  Accordingly, the Court hereby **DENIES** OpenMethods' Motion for Reconsideration (Doc. # 153).

### III. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Mediu's Motion in Limine (Doc. # 150) and **DENIES** OpenMethods' Motion for Reconsideration (Doc. # 153).

Date:  July 9, 2012  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge