# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| OPEN METHODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10-0761-CV-W-FJG |
| | ) |
| MEDIU, LLC, ET AL., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is defendants' Motion to Enforce Settlement Agreement or Alternatively Motion to Dismiss (Doc. # 166).

## I. BACKGROUND

Open Methods, LLC ("OM") is a company which specializes in locating and providing consultants who are skilled in voice over IP and call center applications. Since 2005, Mediu, LLC ("Mediu") had been one of OM's customers and OM had provided several consultants to Mediu. In November 2008, Mediu contacted OM for assistance in locating a consultant to work on a Voice Genie project known as the AT&T New Jersey Project. After reviewing several candidates, OM and Mediu entered into a written contract whereby OM agreed to provide an on-site consultant, Kris Garg ("Garg"), to work on the AT&T New Jersey project. The initial term of the contract was from December 1, 2008 to July 31, 2009. Either party could terminate the contract with two weeks notice. The contract contained a non-solicitation clause which prohibited Mediu from hiring Garg directly or indirectly without OM's consent. At the same time, OM entered into an oral contract with Garg to work on the project. In August 2009, both the

written contract and the oral contract were extended for three months by agreement of the parties from mid-August 2009 to mid-November 2009. Mediu paid OM all outstanding invoices for work Garg performed on the project through October 2009. Open Methods has paid Garg for his work through June 2009. OM has sued Mediu for breach of contract, alleging that Mediu failed to pay OM fees from November 2009 to May 2010 and also for soliciting and hiring Garg in violation of the non-solicitation agreement. Mediu filed a counterclaim against OM for breach of contract, unjust enrichment and declaratory judgment. The trial in this case was scheduled to begin on July 24, 2012.

On July 12, 2012, counsel for the parties began settlement discussions. Counsel for Mediu offered to settle the case for a one-time payment of $10,000 in exchange for OM's full and final release of all claims against Mediu. On July 17, 2012, OM rejected the $10,000 offer and instead made a counter-offer to settle the case for $66,914.00. Later the same day, counsel for Mediu responded and asked how/when Garg would get paid from the proposed settlement proceeds? Counsel stated that "[e]ven if Mediu paid the amount stated in OM's counteroffer, Garg is still owed a total of $64,000. It has always been my client's position that Garg needs to be paid." (Doc. # 166-1, p. 4). Mediu then rejected the counteroffer, but stated that they would be willing to settle for $20,000. On July 18, 2012, OM responded that the latest offer of $20,000 was rejected and OM was not making any additional counter-offers at that time. On July 19, 2012, OM presented Mediu with a demand to settle the case for $62,400. At 6:16 p.m. on July 19, counsel for Mediu responded: "[m]y clients agree to the $62,400 in exchange for your client's general release of all claims v. Mediu and Berichon subject to working out

2

final language as well as obtaining a release, as you stated to me earlier today, for the money owed to Garg. We should call the court and let them know the matter has been settled so they can release the trial date. Call me tomorrow morning so we can do that together. I will begin drafting the settlement agreement." (Doc. # 166-1, p. 1). A few days later on July 24, 2012, counsel for OM sent an email to Mediu's counsel inquiring: "Do you have the releases ready for this matter? If you can forward them to me will submit them to my client and Garg so we can try to get this case wrapped up." (Doc. # 167-2, p. 5). On July 27, 2012, counsel for Mediu sent an email to counsel for OM stating:

> I have attached a draft of a proposed settlement agreement in both WORD and .pdf format for your review and approval. You will notice that on 7-19-12, Kris Garg assigned his rights to payment from OpenMethods to Mediu which I have applied as an offset to the amount upon which we agreed later that day. Mediu agrees not to pursue OpenMethods for the difference owed to it after the set-off as part of the consideration for finalizing this agreement. I will back in the office on Monday to discuss any questions or concerns you may have.

(Doc. # 167-2, p. 3).

On July 30, 2012, counsel for OM responded to the email and asked what other verbal or written agreements Mediu had with Garg about the assignment of the contract and also asked about another company that pays Garg. In an email dated later the same day, counsel for Mediu responds that Garg assigned his right to be paid for $10.00 consideration and that this is adequate to support the agreement. With regard to the issue about the other company, Mediu responds that this company is not a party or even a potential party to this case. Mediu's counsel closes by stating:

> We have a valid settlement agreement that meets all the conditions precedent that were discussed last week. It is time to complete the transaction and bring this matter to a close. Please circulate two originals

3

of the agreement bearing your clients' signatures and send the originals to me. I will ask my clients to sign them both and will then send one of the originals to you for your records. In the meantime, I will draft a stipulation of dismissal for the Court's approval.

(Doc. # 167-2, p. 15). In a email sent on July 31, 2012, counsel for OM responded:

The settlement you outline in your email below is not what we agreed to on July 19, 2012. During telephone conferences on that day we talked about OpenMethods obtaining a release from Garg using the proceeds from the $62,400 offer you accepted.

  Per your request, we agreed that any release obtained by OpenMethods from Garg would contain language releasing both OpenMethods and Mediu. In your email accepting the $62,400 demand you stated: "My clients agree to the $62,400 in exchange for your client's general release of all claims v. Mediu and Berichon subject to working out final language as well as obtaining a release, as you stated to me earlier today, for the money owed to Garg."

During our telephone conversation on July 19, 2012, you told me that you would get me the release language you wanted to use for Mediu in the release OpenMethods was going to present to Garg. That is why I asked you for the release in my email of July 24, 2012, below in which I stated: "Do you have the releases ready for this matter? If you can forward them to me I will submit them to my client and Garg so we can try to get this case wrapped up." I would not present a release to Garg if I had known that an assignment of contractual rights from Garg to Mediu was already executed.

You and I discussed presenting Garg with a settlement offer of $18,800 after the close of discovery in this case. You approached me with this proposal in November of 2011. It was my intent to negotiate a settlement with Garg using figures from your proposal.

You never indicated during telephone conversations or emails that Krishan Garg had assigned the rights in his contract with OpenMethods over to Mediu for $10.00. Your email sent at 5:06 p.m. on Friday July 27, 2012, was the first time you had informed me that Garg had assigned his contract rights over to Mediu.

My client did not agree to a settlement of $62,400 with a $64,000 offset whereby Mediu would pay OpenMethods $0.00, zero, nothing. I am advising my client not to sign the proposed Settlement Agreement and Mutual Release that are attached as they do no reflect my client's

understanding of the agreement.

(Doc. # 167-2, p.2).

## III. STANDARD

In <u>Grant v. Sears</u>, 379 S.W.3d 905 (Mo.App.2012), the Court stated:

> the party moving for enforcement of the purported settlement, had the burden to prove the existence of the settlement agreement by clear, convincing, and satisfactory evidence. . . . Evidence is clear and convincing if it instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition, [such that] the fact finder's mind is left with an abiding conviction that the evidence is true. . . .[T]he question of whether the parties entered into an enforceable settlement agreement is governed by contract law. To show a legal, valid settlement agreement, one must prove the essential elements of a contract: offer, acceptance and consideration. . . . An offer must be accepted as tendered to result in a contract. . . . Thus, there is no settlement agreement without a definite offer and a mirror-image acceptance. . . . [I]f a purported acceptance contains additional or different terms, it constitutes a counteroffer, which operates to reject the original offer and no contract is formed.

<u>Id</u>. at 914-15 (internal citations and quotations omitted). The Court further explained: "A mutual agreement is reached when the minds of the contracting parties [ ] meet upon and assent to the same thing in the same sense at the same time. . . . A meeting of the minds occurs when there is a definite offer and an *unequivocal acceptance*." <u>Id</u>.at 916 (internal quotations and citations omitted).

## III. DISCUSSION

In their Motion to Enforce the Settlement, Mediu argues that the parties agreed on the material terms of the settlement: OM would provide Mediu with a general release of any/all claims against defendants in exchange for $62,400, conditioned upon "obtaining a release for the money owed to Garg." Mediu states that it fulfilled that condition (obtaining the release) when it obtained the legal right to collect money which OM owed Garg.

5

OM argues in opposition that there was no valid settlement agreement reached by the parties, because defendants did not mention until July 27, 2012, that they had obtained an assignment from Garg and intended to offset the entire settlement amount. OM asserts that the assignment and the offset of the settlement amount was an essential term of the deal. OM states that based upon the emails exchanged between counsel, it is clear that defendants changed the terms of the proposed settlement agreement in their email of July 27, 2012, and as such no settlement was reached. Finally, OM requests reimbursement of its attorney fees as a result of defendants' bad faith negotiation.

In reply, Mediu argues that it did not introduce any "additional terms" into the Settlement Agreement. Mediu states that OM agreed to accept $62,400 and that a release was to be obtained from Garg. Mediu argues that the assignment from Garg to Mediu merely changes the payee. Instead of OM paying Garg the $64,000, Mediu states that plaintiff would pay Mediu. Mediu also argues that OM's accusation of fraud/bad faith on the part of defendants is unsupported. Mediu states that it has done nothing "but provide Plaintiff with every opportunity to remedy the wrong done to Garg. Garg is owed approximately $64,000.00 from Plaintiff. Defendants obtained a release from Garg to ensure that this matter was resolved once and for all." (Mediu's Reply Suggestions, p. 5). Mediu states that OM is not entitled to its attorney fees' because it did not act in bad faith.

In the instant case, it is apparent that the parties did not reach an agreement on the essential terms of the settlement. On July 17, 2012, in response to an offer from OM, Mediu did raise the issue of how/when Garg would get paid. In that email however,

6

Case 4:10-cv-00761-FJG   Document 169   Filed 02/15/13   Page 6 of 8

Mediu rejected OM's counteroffer and offered to pay $20,000. The next day, OM rejected the offer. On July 19, 2012, OM stated "my client has authorized me to present you with a demand of $62,400." The same day, Mediu accepted the offer "in exchange for your client's general release of all claims v. Mediu and Berichon subject to working out final language as well as obtaining a release, as you stated to me earlier today, for the money owed to Garg." However, in the email, Mediu's counsel does not specify what OM's counsel had stated to him earlier in the day regarding the release. Nor are any other details regarding the release mentioned in the email. As the court in Grant, noted, "[a] determination of whether an offer has been accepted depends on what is actually said and done; it does not depend on the understanding or supposition of one of the parties." Id. at 917 (citing Muilenburg, Inc. v. Cherokee Rose Design and Build, L.L.C., 250 S.W.3d 848,852 (Mo.App.2008)). So, even though Mediu's counsel may have understood that they would be drafting and obtaining a release from Garg, this is not what OM's counsel understood. On July 24, 2012, counsel for OM inquired whether the releases were ready and stated that if Mediu will forward them, he will submit them to his client and Garg so that the case can be wrapped up. Thus, from OM's counsel's email, it is clear that he thought he would be presenting the release to Garg and presumably negotiating a payment to Garg in exchange for Garg's signature on the release. In the numerous emails exchanged between counsel over a period of several days, there was never any discussion that Mediu was working with Garg or that Garg had agreed to assign his right to payment to Mediu. Mediu's counsel never mentioned any "offset" to the amount which they had agreed to pay OM. The offset was clearly an essential term of the settlement. In his last offer, Mediu's counsel mentioned the

7

release from Garg, but it was never clarified which party was responsible for obtaining the release or if any or what amount of money was to be paid to Garg. Thus, the Court finds that there was no "meeting of the minds" regarding this essential terms of the settlement agreement, because there was not "a definite offer and an *unequivocal acceptance*." Grant, 379 S.W.3d at 916.

Each side has requested that the Court award them their attorneys fees and costs for preparing and filing the Motion to Enforce or responding to the Motion. However, the Court declines to award any attorneys' fees or other sanctions, because it is not clear that either party negotiated in bad faith.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** defendants' Motion to Enforce the Settlement Agreement (Doc. # 166). The Court will issue a revised Scheduling and Trial Order once a new trial date has been determined.


Date: February 15, 2013　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　United States District Judge